UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARY BETH GARCEAU　　　　　　　　　：
　　　　　　　　　　　　　　　　　　：
　　　Plaintiff　　　　　　　　　　　：
　　　　　　　　　　　　　　　　　　： Civil No.
v.　　　　　　　　　　　　　　　　　：
　　　　　　　　　　　　　　　　　　：
YALE UNIVERSITY　　　　　　　　　　：
　　　　　　　　　　　　　　　　　　： NOVEMBER 22, 2006
　　　Defendant　　　　　　　　　　 ：

## COMPLAINT

1.	This is a civil action for damages and other relief brought pursuant to Title VII of the Civil Rights Act of 1964, Section 701 et seq., as amended 42 U.S.C. § 2000e et seq., and as amended by the Civil Rights Act of 1991.

2.	This action is authorized by 42 U.S.C. § 2000e-5. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1337. Venue is appropriate pursuant to 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000 3-5(f)(3), this being the District in which the unlawful employment practices complained of occurred.

3. The plaintiff has in law or equity complied with all of the procedural prerequisites to suit under 42 U.S.C. § 2003-5, by filing a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and a charge of employment discrimination with the Equal Employment

Opportunities Commission ("EEOC"). The plaintiff received a Right to Sue letter from the EEOC and has duly commenced this action within ninety days of receipt thereof.

THE PARTIES

4. The plaintiff, Mary Beth Garceau, was at all times mentioned, and still is, a female citizen of the United States and a resident of Madison, Connecticut.

5. At all times relevant to this Complaint, the defendant, Yale University, was a duly organized corporation and educational institution authorized to do business and doing business in the State of Connecticut located in New Haven, Connecticut. At all relevant times, the defendant employed in excess of twenty employees.

THE FACTS

6. Plaintiff commenced permanent, full-time employment with the Defendant in July 2001. She held the job of Administrative Associate I working in the University's Department of Pharmacology.

7. The Department of Pharmacology was headed by Dr. Joseph Schlessinger. Dr. Schlessinger was plaintiff's only supervisor and plaintiff worked for and reported directly to him. From the very beginning of plaintiff's employment she was subjected to a sexual, offensive and harassing work environment on account of persistent, unbearable and perverted conduct of the part of Dr. Schlessinger.

8. The pattern of sexually harassing and offensive conduct on the part of Dr. Schlessinger,

included the following conduct and incidents:

- a. The very first day that plaintiff worked with Dr. Schlessinger, in July of 2001, he told a lewd and sexually offensive joke to plaintiff in the presence of a visiting post-doctoral professional. The joke concerned penis size and Dr. Schlessinger watched for plaintiff's to his comment. The joke embarrassed plaintiff who attempted to ignore it.

- b. In the months of July and August of 2001, Dr. Schlessinger revealed many personal things to plaintiff concerning his relationships with women. He disclosed details of his marriage and sexual infidelity during all of his business travels. He bragged about the number of woman with whom had sexual relations over the years. In particular, he had actually counted the number of women he had sex with and he told plaintiff that he slept with 46 different women. These types of conversations always took place after he summoned plaintiff into his office and asked her to sit down. Plaintiff refused to react to any of it and excused herself.

- c. In September to October of 2001, Dr. Schlessinger again commenced a conversation about sex with the plaintiff, opining there is nothing wrong with two consenting adults having sex irrespective of their commitments to spouses or other people. In the context of this conversation, he used himself and the plaintiff as an example, saying, "I don't see anything wrong if we wanted to sleep together". He added, "The only

3

        problem is that it would be more difficult because I work with my wife". Plaintff became extremely uncomfortable and moved books around the room until she could leave.

d.      In October of 2001, Dr. Schlessinger summoned plaintiff into his room for the purpose of showing her pictures on his computer. The pictures were of women with large breasts who were dressed in halter tops. When he showed her these pictures, he told her that he believed that the women looked sexy dressed that way, add that plaintiff never dressed that way for work. He commented about the size of plaintiff's breasts and told plaintiff that his son had sent him these pictures through the internet.

e.      In January or February 2002, a new graduate student joined the laboratory, an indivual who wore tight-fitting clothing to work. Dr. Schlessinger commented to plaintiff on almost a daily basis about the woman's underwear. He told plaintiff that he had noticed that she wore thong bikini underwear, remarked how sexy she looked in them and then asked plaintiff if she too wears such underwear. Embarassed, plaintiff changed the subject. The very next day, while plaintiff was working on Dr. Schlessinger's computer, he approached plaintiff, looked down her pants and made comments about her underwear. He repeated this behavior for several consecutive days.

f. In April to May 2002, plaintiff had the responsibility to schedule a meeting between Dr. Schlessinger and the Director of the Cancer Center. Dr. Schlessinger became angry because of a decision a committee made to reject his preferred candidate for that position. When plaintiff discussed with him the scheduling of a meeting, he answered, "Fuck them, I am not meeting with them". Surprised, plaintiff responded in question form, "Fuck them?". Dr. Schlessinger responded, "I bet it would be fun to fuck you." At this point, plaintiff became fearful and left the room.

g. In the summer of 2002, Dr. Schlessinger called plaintiff and requested that she pick him up at his home because he did not want to take his car to work and leave it there during a business trip. Dr. Schlessinger greeted plaintiff at his front door with his shirt open and no clothes underneath. He requested plaintiff to come upstairs with him to his bedroom to help him pack. Although plaintiff was nervous and fearful because of the request, she complied because he was her supervisor. Plaintiff followed him upstairs and watched him pack and took him to work.

h. In November of 2002, while reading e-mails, Dr. Schlessinger commented again to plaintiff about her breast size, opining that they were not very big. When plaintiff attempted to change the subject, Dr. Schlessinger stated, "Come here, I want to show you something" and revealed to plaintiff a picture of a bare breasted woman with very large breasts on his computer. Dr. Schlessinger told plaintiff, "I am going to print this

5

and should you take it home to your husband". He printed a copy and handed it to plaintiff.

i. In January of 2003, Dr. Schlessinger called plaintiff into his office again stating, "Come here - I want to show you something". He showed plaintiff a hard-core pornography web site on his computer containing pictures of naked men and women including pictures of males in the process of ejaculating. Plaintiff again informed Schlessinger that she had no interest in such material.

j. In March to April of 2003, as plaintiff was making arrangements for a limousine for Dr. Schlessinger, he opened his desk drawer and showed her a picture of a naked woman with her head missing. He told plaintiff that it was a picture of his wife. At that very moment, another doctor, Schlessinger's wife, appeared and observed him showing plaintiff the picture and started to yell at her husband. Plaintiff quickly left the office.

k. In April to May of 2003, while plaintiff was working late and in the process of scanning a document, Dr. Schlessinger, in front of two other individuals and in reference to plaintiff, stated, "She likes to be on her knees all the time - that's when she is happy". Plaintiff was humiliated and demeaned in front of others and was so upset she had to flee the area to compose herself.

9. At all times relevant to this complaint, defendant had complete power and control over

the working conditions and terms of employment of the plaintiff and had an obligation to ensure and provide the plaintiff a work environment free from such harassment, demeaning insults and abuse on account of her sex.

10. The aforesaid acts and omissions of the defendant violated Title VII of the Civil Rights Act of 1964, Section 701 et. seq. as amended 42 U.S.C. 2000e et. seq.

11. As a direct and proximate result of the defendant's unlawful behavior as above-described, the plaintiff has was forced to resign her employment as she could not tolerate the environment any longer and her repeated complaints to University officials and efforts to gain relief from Dr. Schlessinger's abuse were unsuccessful as University officials were more interested in protecting Dr. Schlessinger as he was deemed more valuable to the University and said officials gave every indication that the plaintiff's complaints would not only be ignored but the plaintiff was the subject of unwarranted accusations and investigations into her own conduct and became the focus of the University's investigative efforts, all in an attempt to discredit her and protect the standing of Dr. Schlessinger.

12. Because Yale had refused to address her concerns, preferring to protect a powerful department head, plaintiff was forced to resign her position at Yale. On or about March 13, 2004, a representative of Yale wrote to plaintiff confirming termination of her employment effective March 5, 2004.

13. As a direct and proximate result of the defendant's unlawful conduct as aforedescribed,

7

the plaintiff suffered the loss of her employment and the benefits attendant thereto and endured the inconvenience and expense of seeking new employment and damage to her professional reputation and occupational standing.

WHEREFORE, the plaintiff demands the following relief against the defendant as follows;

A. Back pay and benefits;

B. Compensatory damages in an amount which a jury shall determine to be just and reasonable;

C. Punitive damages in an amount which a jury shall determine to be just and reasonable;

D. The costs of this action, including reasonable attorney's fees;

E. Prejudgment and other lawful interest; and

F. Such other and additional relief as this Court may deem just and equitable.

THE PLAINTIFF

MARY BETH GARCEAU

BY: _____
KAREN LEE TORRE
Federal Bar No. ct01707
Law Offices of Karen Lee Torre
51 Elm Street
Suite 307
New Haven, CT 06510
(203) 865-5541

Her Attorney

8

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARY BETH GARCEAU | : |
| Plaintiff | : |
| | : Civil No. |
| v. | : |
| YALE UNIVERSITY | : |
| | : NOVEMBER 22, 2006 |
| Defendant | : |

## DEMAND FOR JURY TRIAL

The plaintiff hereby claims a trial by jury as to all issues in this action.

THE PLAINTIFF
MARY BETH GARCEAU

BY: _____
KAREN LEE TORRE
Federal Bar No. ct01707
Law Offices of Karen Lee Torre
51 Elm Street
Suite 307
New Haven, CT  06510
(203) 865-5541

Her Attorney